IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THE NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:23-CV-1471-L** |
| **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol Tobacco and Firearms; U.S. DEPARTMENT OF JUSTICE; and MERRICK GARLAND, in his official Capacity as U.S. Attorney General,** | § § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is The National Rifle Association of America's Motion for Preliminary Injunction ("Motion") (Doc. 8), filed July 24, 2023. For the reasons herein explained, the court **grants** the Motion (Doc. 8).

## I.     Background

The National Rifle Association of America ("NRA" or "Plaintiff") brought this action on July 3, 2023, against the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), Steven Dettelbach, in his official capacity as the Director of the ATF; the United States Department of Justice; and Merrick Garland, in his official capacity as the United States Attorney General (collectively, "Defendants"), for alleged violations of the Administrative Procedure Act ("APA") and the Second Amendment to the United States Constitution. In particular, the NRA challenges the ATF's January 31, 2023 issuance of an administrative rule titled "Factoring Criteria for

Firearms with Attached 'Stabilizing Braces,'" 88 Fed. Reg. 6,478 ("Final Rule"), which created a framework for determining whether firearms equipped with a stabilizing brace qualify as a short-barreled rifle ("SBR"), a category of firearms regulated by the National Firearms Act of 1934 ("NFA").

The NFA was enacted to deter the use of dangerous, concealable firearms associated with emerging organized criminal activity. *See United States v. Thompson/Center Arms Co*., 504 U.S. 505, 517 (1992) (plurality op.). Subsequently, Congress enacted the Gun Control Act of 1968 ("GCA"), which expanded federal firearms regulation. 18 U.S.C. §§ 921-31.  One category of firearms regulated by the NFA is a short-barreled rifle ("SBR"). 26 U.S.C. § 5845(a). The NFA imposes registration, taxation, and use requirements for SBRs. 26 U.S.C. §§ 5801-02, 5811-12, 5821-22, 5841, 5845(a).

The justification for regulating SBRs is partly attributable to the fact that they have firepower similar to that of an ordinary rifle but are more concealable than ordinary rifles and, thus, more dangerous. *See Thompson/Center Arms Co*., 504 U.S. at 517 ("[T]he NFA's object was to regulate certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used.").

There are serious consequences for failing to comply with the NFA and GCA:

> Violating the GCA exposes one to criminal penalties, including fines and a maximum of five years' imprisonment. 18 U.S.C. § 924(a) (1). Violating the NFA carries the potential for ten years' imprisonment, 26 U.S.C. § 5871, seizure and forfeiture of the firearm, id. § 5872, an assessment of tax liabilities, 27 C.F.R. § 479.191, and a fine up to $250,000 for an individual and $500,000 for an organization. 18 U.S.C. § 3571(b)-(c). As failure to comply can also be a felony, a violation may also lead to a lifetime ban on ownership of firearms. *See* 18 U.S.C. § 922(g)(1).

*Mock v. Garland*, 75 F.4th 563, 570-71(5th Cir. 2023).

In response to confusion about whether brace-equipped firearms constitute SBRs and are subject to regulation under the NFA and GCA, the ATF engaged in rulemaking to create a framework for determining whether attaching a brace to a firearm renders the brace-equipped firearm an SBR under the NFA. 88 Fed. Reg. 6,478.  In June 2021, the ATF published a notice of proposed rulemaking ("Proposed Rule"). 86 Fed. Reg. 30,826. The Final Rule was published in the Federal Register on January 31, 2023. 88 Fed. Reg. 6,478. The Final Rule amends the definition of "rifle" in the NFA and GCA. 27 C.F.R. §§ 478.11, 479.11.

Under the Final Rule, "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder," is interpreted by the ATF to include any weapon "that is equipped with an accessory, component, or other rearward attachment" such as a stabilizing brace "that provides surface area that allows the weapon to be fired from the shoulder, provided other factors . . . indicate that the weapon is designed, made, and intended to be fired from the shoulder." 88 Fed. Reg. 6,480.  After considering whether a weapon provides surface area allowing it to be fired from the shoulder, the ATF considers six additional criteria to determine whether the weapon is designed, made, and intended to be fired from the shoulder.  *Id.*  The ATF estimates that the Final Rule applies to 99% of brace-equipped firearms, meaning that the ATF considers those devices SBRs subject to the NFA. *See Mock*, 75 F.4th at 574.

Persons who acquire or transfer a brace-equipped firearm that qualifies as an SBR under the Final Rule's criteria are required to comply with the Rule by May 31, 2023, by either: (1) registering the firearm; (2) removing the short barrel from the firearm and attaching a longer rifle barrel or permanently removing and disposing of the brace so the firearm no longer qualifies as an SBR; (3) turning the firearm over to the ATF; or (4) destroying the firearm.  88 Fed. Reg. 6,570. Individuals who registered by May 31, 2023, were not required to pay the $200 fee.  *Id.*

Additionally, the Final Rule provides that the ATF would not initiate an enforcement action for new acquisitions or transfers of brace-equipped firearm for at least 60 days from the date of publication. 88 Fed. Reg. at 6,481.

According to the NRA, the "Final Rule vests [the] ATF with unbounded discretion to regulate stabilizing braces . . . at a severe detriment to the millions of Americans who relied on ATF's prior rulings and acquired lawful firearms equipped with stabilizing braces."  Pl.'s Compl. 3.  In addition, the NRA contends that:

> The Final Rule arbitrarily reverses several years of settled administrative practice and by a stroke of a pen [] redefines "pistols" with stabilizing braces as short-barreled "rifles" subject to the onerous licensing and taxation requirements of the National Firearms Act of 1934, as amended, codified at 26 U.S.C. § 5801, *et seq*. ("NFA"). 18 U.S.C. §921 (a)(8); 26 U.S.C. § 5845(a)(4). The new definition of "rifle" promulgated by the ATF now turns on an incomprehensible six-factor test that is based on ultra-subjective criteria about a firearm's "likely use" and the parsing of marketing materials that a gun purchaser may never have even seen.

*Id.*   The NRA alleges that it and its members in Texas and nationwide face irreparable harm because of "the ATF's [a]rbitrary [p]olicy [c]hange [v]ia the Final Rule."  *Id.* at 3.

The NRA further alleges that:

> Because of the Final Rule, the millions of Americans, including many of the nearly 350,000 NRA members in Texas and over four million members nationwide, who own a pistol and a stabilizing brace, regardless of style or caliber or type of brace, must either dispose of, alter, or register their firearms. Otherwise, they face the prospect of 10 years in prison, and large fines.

*Id.*  The NRA, therefore, takes the position that the "risks associated with the Final Rule and these potential penalties irreparably harm [its] members," and it seeks a declaratory judgment and preliminary injunction to protect its members from the enforcement of the Final Rule.  The NRA contends that its members are "similarly situated" to the plaintiffs in *Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023), and are entitled to a preliminary injunction based on the Fifth Circuit's reasoning in that case.  According to the NRA, the court in *Mock* "implicitly found irreparable

harm arising from the Final Rule along with a likelihood of success on the merits in holding [that] the plaintiffs before the court and their members should be protected from enforcement of the Final Rule and [in] issuing a preliminary injunction." *Id.*

Before bringing this action, the NRA moved on June 6, 2023, to intervene in Civil Action No. 3:21-CV-116-B, pending before United States District Judge Jane Boyle, to challenge the Final Rule regulating pistol braces. The NRA filed its Motion to Intervene in Judge Boyle's case after the plaintiffs in that case and the plaintiffs in *Mock* sought clarification as to whether the preliminary injunctions entered in those cases applied only to the named plaintiffs or also to the plaintiff associations' members. Judge Boyle denied the NRA's request to intervene as of matter of right or permissively, and the NRA appealed. Finding no reversible error of law or fact and no abuse of discretion, the Fifth Circuit affirmed in part and dismissed in part the appeal. *Second Amendment Found., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosive*s, No. 23-10707, 2023 WL 8597495, at *1 (5th Cir. Dec. 12, 2023) (noting that "[i]f the court holds the district court did not abuse its discretion, it 'must dismiss the appeal for lack of jurisdiction.'") (citing *Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc)).

The NRA filed its Motion on July 24, 2023. Because it acknowledged that it was not seeking *ex parte* relief and Defendants had yet to be served, the court entered an order advising that it would address the Motion in the normal course of business after service on all Defendants had been effected, briefing on the Motion was complete, and the NRA complied with this district's Local Civil Rules by filing a Notice of Related Cases. Thereafter, the NRA moved on August 2, 2023, to expedite the briefing. It also filed supplemental legal authority in support of its Motion in light of the Fifth Circuit's August 1, 2023 opinion in *Mock* and decision to remand the case to the district court for further proceedings regarding the plaintiffs' preliminary injunction motion.

The undersigned granted the NRA's request to file the supplemental authority in support of its Motion. It denied without prejudice the motion to expedite briefing on its Motion, though, because it disagreed that the *Mock* plaintiffs' entitlement to a preliminary injunction was a foregone conclusion given the procedural posture of *Mock* and the Fifth Circuit's opinion in that case, which only addressed the plaintiffs' likelihood of succeeding on their logical outgrowth argument under the APA.[1] The court also noted that, unlike *Mock*, which had been pending several months, this action was only recently filed, and it was filed approximately five months after the Final Rule went into effect, and approximately one month after the date for compliance with the Final Rule. Although the NRA requested injunctive relief in its Complaint, the issue was not briefed by it until it filed its Motion three weeks later.

Briefing on the Motion was complete when the NRA filed its reply on September 8, 2023, and the supporting declaration of NRA secretary and general counsel John Frazer to establish its

---

[1] The district court in *Mock* explained the "logical outgrowth" test as follows:

> When an agency promulgates a regulation, it must follow certain APA procedural requirements, including issuing a "notice of proposed rule[]making . . . in the Federal Register" and notifying the public of "the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b). Interested persons must have the opportunity to offer comment on the proposed regulation. *Id.* § 553(c). And at publication, the agency's Final Rule must be a "logical outgrowth" of the proposed rule such that those subject to its regulation are given fair notice of its contents. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 [] (2007). A final regulation satisfies this test if the proposed version "fairly apprises interested persons of the subjects and issues the agency is considering." *Chem[ical] Mfrs. Ass'n v. EPA*, 870 F.2d 177, 203 (5th Cir. 1989). However, the final regulation need not "specifically identify every precise proposal [the agency might] ultimately adopt as a final rule." *Id.*

> Importantly, final rules that are merely "interpretive" are not subject to these same notice-and-comment requirements, therefore do not need to satisfy the logical outgrowth test, and may take immediate effect. 5 U.S.C. § 553(d); *see Texas v. EPA*, 389 F. Supp.3d 497, 504 (S.D. Tex. 2019) (noting that "notice-and-comment requirements" for substantive regulations includes the "logical outgrowth" test). Interpretive rules are those that, as their label indicates, merely "interpret existing, substantive law." *Flight Training Int'l, Inc. v. FAA*, 58 F.4th 234, 242 (5th Cir. 2023) (emphasis added).

*Mock v. Garland*, 666 F. Supp. 3d 633, 641-42 (N.D. Tex. 2023), *rev'd and remanded on other grounds*, 75 F.4th 563 (5th Cir. 2023).

associational standing to bring this action on behalf of its members.  Although the associational standing issue was first raised in Defendants response to the NRA's Motion, they did not seek to file a reply in support of their argument that the NRA lacked standing to bring this action and seek injunctive relief.  Between September 13, 2023, and March 6, 2024, both parties filed motions for leave to file supplemental authority in support of their respective positions, the first of which was opposed by the NRA.[2]  These motions were granted by the court by separate order.  Notwithstanding the NRA's delay in bringing this action and filing suit, the court determines that the NRA's Motion should be granted to maintain the status quo pending the resolution of this litigation.  The court also determines, for the reasons that follow, that the NRA has associational standing to seek injunctive relief with respect to the claims asserted despite Defendants' argument to the contrary.

## II.    Discussion

### A.  Article III Associational Standing

 "A preliminary injunction, like final relief, cannot be requested by a plaintiff who lacks standing to sue." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020), *as revised* (Oct. 30, 2020).  Accordingly, the court first addresses Defendants' argument that the NRA lacks Article III standing to sue and seek injunctive relief.

In response to Plaintiff's Motion, Defendants contend that the NRA lacks standing to seek injunctive relief on behalf of its members because it has not met its burden of establishing associational standing.  In this regard, Defendants contend that the NRA has failed to identify a member who has suffered the requisite harm and has standing to sue on his or her own right

---

[2] This is one of many lawsuits filed in this circuit and around the country challenging The Final Rule regarding stabilizing braces. A detailed discussion of the status of cases filed in this circuit can be found in *Patterson v. ATF, et al.*, No. 4:23-CV-80, 2024 WL 897595, at *2-10 (E.D. Tex. Mar. 1, 2024).

because the member has sustained or is immediately in danger of sustaining some direct injury as the result of the Final Rule. Defs.' Resp. 11-12 (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009); and *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir. 2012)).

Defendants assert that the NRA identifies a single NRA member, Dr. Carl Carlson, whose only alleged injury is not being able to retain his firearm in its current configuration because the Final Rule "requires [him] to modify, destroy, or surrender it." Defs.' Resp. 12 (citing Pl.'s App. 183, Decl. of Dr. Carlson ¶ 7). Defendants argue that this alleged harm to Dr. Carlson is insufficient to confer associational standing on the NRA because: (1) Dr. Carlson's statement regarding the Final Rule and what it requires is incorrect since gun "owners had four months (from January 31 to May 31, 2023) to lawfully register firearms with stabilizing braces, which were classified as short-barreled rifles," and "[r]egistration during this period for such firearms was also tax-free"[3]; and (2) Dr. Carlson's failure to register his firearm amounts to "self-inflicted injury" that was the result of his voluntary decision to forego registration. Defs.' Resp. 12-13 (quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018).

Defendants contend that the NRA's deficient allegations as to a single NRA member, who at most suffered only a self-inflicted injury, are not enough to demonstrate that it has standing to sue on behalf of millions of NRA members. Defendants further assert that the NRA has not alleged or presented evidence "as to 'indicia of membership' in its organization, such as 'a clearly articulated and understandable membership structure' with members who 'elect[] the governing body,'" and it has not explained "how its members direct or control the organization." Defs.'

---

[3] Defs.' Resp. 12 (citing 88 Fed. Reg. at 6,481, 6,570).

**Memorandum Opinion and Order – Page 8**

Resp. 13-14 & n.6 (quoting *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997)).

The NRA counters that it has the requisite Article III associational standing to challenge the Final Rule on behalf of its members because "[a]n increased regulatory burden typically satisfies the injury[-]in[-]fact requirement" for standing, and "Dr. Carlson faces just such a burden" in that the Final Rule requires him to either register his firearm with the ATF to keep it lawfully or destroy the firearm. Pl.'s Reply 15-16 (quoting *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 446 (5th Cir. 2019)). The NRA asserts that the Fifth Circuit in *Mock* recognized that NFA-regulated firearms are "subject to stringent restrictions and requirements." Pl.'s Reply (*Mock*, 75 F.4th at 569).

The NRA asserts that the "indicia of membership" test does not apply to it because it is a "traditional membership association" whose members "rely on the NRA to protect their gun rights, including by pursuing litigation on behalf of its members to protect those rights." Pl.'s Reply 18 (quoting Pl.'s Compl. ¶¶ 15-17). Based on the allegations in its Complaint and the declaration of NRA secretary and general counsel John Frazer, the NRA further asserts:

> The NRA's Board of Directors is elected directly by the NRA's members. Its officers, in turn, are elected directly by the Board of Directors. The Board members are "are in constant touch with [the NRA's] members and make sure that the NRA's day-to-day operations are aligned with [the NRA's] mission of protecting law-abiding gun-owners and their communities."
>
> Regardless, a searching inquiry into the NRA's membership is not necessary. The NRA "is indisputably a voluntary membership organization with identifiable members." "Whe[n], as here, an organization has identified members and represents them in good faith, our cases do not require further scrutiny into how the organization operates."

Pl.'s Reply 18 (citing Pl.'s App. ¶¶ 4-13. (Doc. 10); and quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll*., 143 S. Ct. 2141, 2158 (2023) (footnotes omitted)). The NRA, therefore, contends that it has Article III associational standing.

To establish Article III standing, the NRA has the burden to demonstrate that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"At earlier stages of litigation, however, the manner and degree of evidence required to show standing is less than at later stages." *Speech First, Inc.*, 979 F.3d at 329 (citing *Lujan*, 504 U.S. at 56). "At the preliminary injunction stage, the movant must clearly show only that each element of standing is likely to obtain in the case at hand." *Id.* at 330 (citations omitted). The movant, however, need not show that it was "literally certain" that it would be injured. *Alliance for Hippocratic Med. v. United States Food & Drug Admin.*, 78 F.4th 210, 234 (5th Cir. 2023); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("substantial risk" that injury will occur); *United Farm Workers*, 442 U.S. at 298 ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. But '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'") (citations omitted); *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983) ("a credible threat"). "Because the [NRA] seeks a preliminary injunction on behalf of its members, [it] must clearly show a likelihood that at

least one of its members suffered such an injury." *Speech First, Inc.*, 979 F.3d at 330 (citations omitted).

Associational standing is one way an association or organization can establish an injury-in-fact. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). To establish associational standing, the NRA must establish a likelihood that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *International Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 282 (1986) (citation omitted). With respect to the first of these criteria, a plaintiff has suffered an injury in fact if: (1) he intends "to engage in a course of conduct arguably affected with a constitutional interest"; (2) the future conduct that he intends to engage in is "arguably . . . proscribed by [the legislative rule in question]"; and (3) "the threat of future enforcement of the [challenged legislative rule] is substantial." *Speech First, Inc.*, 979 F.3d at 330 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. at 161-64; *see Mock v. Garland*, 75 F.4th at 583 (concluding that the Final Rule is legislative in character rather than interpretative and thus has the force of law).

The NRA's evidence is sufficient to establish that it is a traditional membership organization because it has members nationwide who, by donating to their organizations, have "joined voluntarily to support [the organization's] mission" of protecting law-abiding gun-owners and their communities. *See Students for Fair Admissions, Inc. v. University of Texas at Austin*, 37 F.4th 1078, 1084 (5th Cir. 2022); Pl.'s App. ¶¶ 4-13. (Doc. 10); *see also* Pl.'s Compl. ¶¶ 5-9. Under the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, this is all that is required. 143 S. Ct. at 2158-59. "Whe[n], as here, an

organization has identified members and represents them in good faith, [the Supreme Court's decisions] do not require further scrutiny into how the organization operates." *Id.* at 2158.

The NRA has also carried its burden of establishing, at this early preliminary injunction stage of the litigation, that one of its members has or likely will face harm in the future. NRA member Dr. Carlson states in his declaration, which is attached to the NRA's Complaint, that he currently owns a Daniels Defense Mark 18 pistol that he must use with a stabilizing brace because he suffers from a skeletal disease that limits his mobility and causes him pain in everyday life activities, including using a firearm. Regardless of whether he registers the firearm with the stabilizing device in the future[4] or registered it tax-free in the past in an attempt to comply with the ATF certification procedure between January 31 and May 31, 2023, the Final Rule will significantly increase the regulatory burden for firearms with stabilizing braces by making them subject to NFA regulation. *See Mock*, 75 F.4th at 569.

In this regard, the Fifth Circuit in *Mock* recognized that:

> **NFA-regulated firearms** require registration in the National Firearms Registration and Transfer Record, *see* 26 U.S.C. § 5841(a), and **are subject to stringent restrictions and requirements**. NFA-regulated firearms may not be possessed, made, or transferred without the authorization of the Attorney General. *Id.* §§ 5812, 5822. The ATF's authorization is also required before crossing state lines with an NFA weapon. 18 U.S.C. § 922(a)(4); 27 C.F.R. § 478.28.

*Mock*, 75 F.4th at 569 (emphasis added and footnote omitted). As the NRA correctly notes, "[a]n increased regulatory burden typically satisfies the injury[-]in[-]fact requirement" for Article III standing. Pl.'s Reply 15 & n.101 (quoting *Texas*, 933 F.3d at 446). Accordingly, Dr. Carlson's

---

[4] For purposes of standing, "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Cruz v. Abbott*, 849 F.3d 594, 598 (5th Cir. 2017) (quoting *Susan B. Anthony List*, 573 U.S. at 158 (citation and internal quotation marks omitted). Likewise, when a plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest . . . and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Cruz*, 849 F.3d at 598-99 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citation omitted)).

failure to take advantage of the four-month tax free registration window before the Final Rule went into effect does not preclude a finding of standing notwithstanding the Government's self-inflicted harm argument.

Further, for purposes of Article III standing, "[i]t is well established that a credible threat of government action, on its own, provides a plaintiff with a sufficient basis for bringing suit." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007). As demonstrated by this litigation, the ATF intends to enforce the Final Rule. It is also undisputed that noncompliance with the Final Rule is punishable by serious fines and prison time. Thus, the NRA has associational standing to sue on behalf of its members.

### B. Motion for Preliminary Injunction

#### 1. Preliminary Injunction Legal Standard

As the movant seeking a preliminary injunction, the NRA has the burden of establishing that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The NRA must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if the NRA fails to meet any of the four requirements, the court cannot grant the preliminary injunction. The decision whether to grant a preliminary injunction

lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

### 2.   Substantial Likelihood of Success on the Merits

In support of its request for injunctive relief, the NRA contends that it has a substantial likelihood of succeeding on the merits of its claims in Counts 1, 2, and 4 for alleged Second Amendment violations and violations of the sections 706(2)(A), 706(2)(B), and (C) of the APA. It also argues that it is likely to succeed on its claim in Count 5 for alleged violations of section 553(d) of the APA and the Fifth Amendment. The NRA asserts in its Motion that the Fifth Circuit in *Mock* "already implicitly found a likelihood of success on the merits on similar claims," and it is "entitled to the same finding." Pl.'s Br. 9 (Doc. 9). In a later Motion for Leave to File Notice of Supplemental Authority, filed on August 2, 2023, the NRA similarly argued that, "[b]ecause the *Mock* Ruling addresses issues asserted by the NRA here and arises in a related case involving similar facts and legal issues, [it] seeks leave to file the attached Notice of Supplemental Authority supplementing the record related to its Motion for Preliminary Injunction." Pl.'s Mot. for Leave (Doc. 19). In a footnote in the same motion, Plaintiff further asserted that "[t]he 'logical outgrowth' analysis[,] which was the focus of the *Mock* Ruling, applies with equal force" to the claim in Count 3 of its Complaint for an alleged violation of the APA. *Id.* at n.2.

The Fifth Circuit in *Mock* focused on the plaintiffs' claim that the Final Rule violates the APA because it is not a logical outgrowth of the Proposed Rule. *See Mock*, 75 F.4th at 578. Because *Mock* concluded that the plaintiffs were likely to succeed on the merits of this claim, it declined to address the plaintiffs' other claims and grounds for injunctive relief, including their constitutional claims. *Id.* at 586 n.59. The NRA raised a similar logical outgrowth argument in its pleadings; however, as Defendants correctly note, this is not one of the claims or arguments it

relies on in seeking injunctive relief.  There are no references to such an argument in its Motion or initial brief.  It was only after the court in *Mock* issued its ruling that the NRA contended in a footnote of its Motion for Leave to File Supplemental Authority that it was entitled to injunctive relief on this ground.

The NRA acknowledges as much, but it asserts in its reply brief that this issue was appropriately presented to the court for consideration because:

> the NRA raised the argument in a Notice of Supplemental Authority it filed, with leave of the Court, a week later. The NRA promptly moved for Leave to File a Notice of Supplemental Authority the day after *Mock* was decided, bringing the decision to the [c]ourt's attention and underscoring that it supported the NRA's request for a preliminary injunction.  Defendants did not object to the NRA's motion, and the [c]ourt granted it.

Pl.'s Reply 3-4.

The NRA did not argue in its initial brief that the Final Rule violates the APA on the ground that it is not a logical outgrowth of the Proposed Rule. Defendants nevertheless were aware before filing their response to the NRA's Motion that Plaintiff was relying on this claim and the logical outgrowth analysis in *Mock* because it was Defendants who brought the issue to the court's attention in responding to Plaintiff's Motion.  Defendants, thus, had an opportunity to brief the issue in responding to the NRA's Motion.  Accordingly, this is not a situation in which a legal argument or claim was raised for the first time in a reply brief that, out of fairness, to the nonmovant would require disregarding the new legal argument or claim or giving the nonmovant an opportunity to respond.  *See Perez v. Bruister*, 823 F.3d 250, 273 n.31 (5th Cir. 2016) (citing *Wright v. Excel Paralubes*, 807 F.3d 730, 736 (5th Cir. 2015)).

The court, therefore, sees no reason why it should not consider this argument and APA claim in ruling on Plaintiff's Motion. To not do so would be exalt form over substance, particularly since the Fifth Circuit has already determined that this claim has a substantial likelihood of

succeeding on the merits.  Based on the reasoning in *Mock*, the court similarly determines that the NRA is likely to succeed on the merits of its claim that the Final Rule violates the APA because it is not a logical outgrowth of the Proposed Rule.  Instead of addressing the parties' argument regarding the likely success on the merits of the NRA's remaining claims, the court turns to the remaining requirements for injunctive relief.

### 3.  Substantial Threat of Irreparable Harm

"[T]he central purpose of a preliminary injunction . . . is to prevent irreparable harm. It is the threat of harm that cannot be undone which authorizes exercise of this equitable power to enjoin before the merits are fully determined." *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975); *Canal Auth. of the State of Florida*, 489 F.2d at 576 ("The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits."). Consequently, "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify" the "extraordinary and drastic remedy" of a preliminary injunction." *Id.* at 573, 576.

To satisfy this prong of the preliminary injunction test, Plaintiff must show that it is "likely to suffer irreparable harm" in the absence of preliminary injunctive relief before a decision on the merits can be rendered, that is, "harm for which there is no adequate remedy at law." *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (quoting *Winter*, 555 U.S. at 20; and citing *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011)).  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weigh[ ]s heavily against a claim of irreparable harm." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 474 (5th Cir. 1985). Exceptions to this general rule have been found, for example, when there is evidence that the denial

of injunctive relief will likely cause the movant to file for bankruptcy or suffer similar irreparable loss that threatens the very existence of its business if it is required to await a determination on the merits of its claim. *See Texas v. United States Envtl. Prot. Agency*, 829 F.3d 405, 434 (5th Cir. 2016) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Recoverable monetary loss may constitute irreparable harm only whe[n] the loss threatens the very existence of the movant's business.")).

"The absence of an available remedy by which the movant can later recover monetary damages, however, may also be sufficient to show irreparable injury." *Enterprise Int'l, Inc.*, 762 F.2d at 474 (footnote and citations omitted). When costs are unrecoverable because of the government-defendant's sovereign immunity from monetary damages, irreparable harm is generally satisfied. *See Wages & White Lion Invs.*, 16 F.4th at 1142. In this circuit, "the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." Restaurant Law Ctr., 66 F.4th at 597 (quoting *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) ("[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs[.]") (footnote and other citations omitted).

In addition, the movant seeking injunctive relief "must show a real and immediate threat of future or continuing injury apart from any past injury." *Aransas Project v. Shaw*, 775 F.3d 641, 663-64 (5th Cir. 2014) (per curiam) (citing *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011)). A "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Daniels Health Scis., LLC*, 710 F.3d at 585; *see also Winter*, 555 U.S. at 22 (rejecting the Ninth Circuit's "possibility" standard as "too lenient" and explaining that a "preliminary injunction will not be issued simply to prevent the possibility of some remote future

injury" because doing so would be "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (citations omitted).

The NRA first argues that its members will suffer irreparable harm and it is entitled to injunctive relief because:

> Members of the NRA are suffering and will continue to suffer irreparable harm as a result of the Final Rule, because they face felony prosecution and imprisonment if they fail to register, destroy, or modify their firearms. In addition to these threats, the NRA and its members face irreparable harm by being forced to surrender or destroy their firearms by an ultra vires action without any remedy for damages. The injury's exact nature might differ, depending on which compliance option the Final Rule forces each firearm owner to undertake. But there is no compliance option that does not cause irreparable harm. No matter the compliance path taken, the Final Rule will necessarily inflict irreparable harm. Indeed, the Fifth Circuit and multiple district courts have already implicitly held irreparable harm exists for similarly situated members of other organizations. The same finding is justified for the NRA and its members.

Pl.'s Br. 22 (footnotes omitted).

For support, the NRA relies on the Fifth Circuit's opinion in *Mock*. *Mock*, however, limited its analysis to the first requirement for injunctive relief and the plaintiffs' logical outgrowth argument as it pertained to their claim that the Final Rule violates the APA's procedural and substantive requirements. *Mock*, 75 F.4th at 586-87 & n.59. It expressly declined to address whether the plaintiffs had also established irreparable harm or satisfied the other requirements for injunctive relief. *Id.*

Contrary to Defendants' assertion, though, the NRA has pointed to evidence that its members will sustain compliance costs that will not be recoverable if it prevails on its APA claim because of Defendants' immunity. Pl.'s Br. 22 n. 105 (citing Pl.'s App. 120-21, Final Rule, Regulatory Impact Analysis, estimating $471.3 million in costs from surrendering firearms, including $2,526 in costs to an average individual). It is also undisputed that the cost to register a

firearm under the Final Rule and NFA is $200. By today's standards, this amount, which has not changed since 1934, may not be exorbitant. *See Mock*, 75 F.4th at 569 ("In today's dollars, $200 in 1934 is approximately $4,500.") (footnote and citations omitted). On the other hand, Defendants do not argue, and the court is not convinced that this amount constitutes a de minimis amount that is insufficient to support a finding or irreparable harm. *See Restaurant Law Ctr. v. United States Dep't of Labor*, 66 F.4th 593, 600 (5th Cir. 2023) (explaining that evidence of substantial compliance costs or a precise dollar amount is not necessary to establish irreparable harm as long as the alleged compliance costs are "more than de minimis.") (citations omitted).

Defendants also contend that the NRA must demonstrate that its named members will sustain compliance costs or otherwise the injury is hypothetical, but the case it cites for this proposition does not support such conclusion. Defs.' Resp. 14 (citing *Sierra Club v. United States Army Corps of Eng'rs*, 482 F. Supp. 3d 543, 559 (W.D. Tex. 2020)). There is also no indication that the ATF does not intend to enforce the Final Rule pending the resolution of this litigation if not enjoined.

Defendants further contend that the failure of Dr. Carlson to register during the tax-free grace period undermines a claim for equitable relief and finding of irreparable harm because such harm was "self-inflicted." Defs.' Resp. 14 (citing *Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021); and *Division 80, LLC v. Garland*, No. 3:22-CV-148, 2022 WL 3648454, at *5 (S.D. Tex. Aug. 23, 2022)). The authority relied on by Defendants, however, is distinguishable in that compliance with the Final Rule, which the Fifth Circuit has already concluded violates the APA, is mandatory and subjects those who do not comply to severe penalties. Consequently, that Dr. Carlson or other NRA members could have registered their firearms tax free during the grace period to avoid the $200 registration fee is quite beside the point. Because any costs incurred by

the NRA's members will be unrecoverable due to Defendants' sovereign immunity from money damages, and the likely reality of NRA members facing criminal penalties and fines for noncompliance during the pendency of this lawsuit, the court determines that the irreparable harm requirement for injunctive relief is satisfied here.[5] *See Wages & White Lion Invs*., 16 F.4th at 1142.

Defendants' contention regarding the NRA's delay in filing suit and its Motion in July 2023 does not persuade the court otherwise. "Absent a good explanation, . . . a substantial period of delay militates . . . against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *Wireless Agents, L.L.C. v. T-Mobile USA, Inc*., No. 3:-05-CV-94-D, 2006 WL 1540587, *3 (N.D. Tex. June 6, 2006) (citing *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc*., 49 F.3d 1551, 1557 (Fed. Cir. 1995)). As Plaintiff correctly notes, the cases relied on by Defendants involved commercial trademark rights, whereas this case involves constitutional rights and regulations affecting those rights. Plaintiff explains that its delay in filing suit and seeking injunctive relief was attributable to its mistaken belief that its members would be protected by the nationwide injunctions sought by plaintiffs in other actions until the Fifth Circuit in *Mock* entered a clarifying preliminary injunction order that applied only to the named plaintiffs and their family members.[6] As indicated, Plaintiff also

---

[5] On November 8, 2023, the district court in *Britto v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 2:23-CV-019-Z, 2023 WL 7418291, at *5 (N.D. Tex. Nov. 8, 2023), issued a nationwide stay of the Final Rule pursuant to 5 U.S.C § 705, which authorizes courts to stay or "postpone the effective date of an agency action." A stay under section 705 "removes the source of the defendant's authority" and "effectively rescinds the unlawful agency action." *Alliance for Hippocratic Med*., 78 F.4th at 254. Thus, it appears that the Final Rule was stayed nationwide as a result of the ruling in *Britto* such that the ATF no longer has the authority to enforce it. The ATF has appealed that ruling and contends on appeal that the imposition of a nationwide stay was not justified. As least one district court has concluded that the nationwide stay of the Final Rule in *Britto* precludes a finding of irreparable harm. *See Watterson v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 4:23-CV-00080, 2024 WL 897595, at *19 (E.D. Tex. Mar. 1, 2024). The effect, if any, of the nationwide stay in *Britto* was not addressed by the parties in this case. The court, therefore, does not consider it in ruling on the NRA's Motion.

[6] The NRA did not submit a declaration with its alleged explanation for delaying in filing suit and seeking injunctive relief. This oversight, however, could have easily been cured if the court had conducted a hearing on its Motion. Regardless, the court determines that the NRA's alleged explanation is sufficient and plausible because, although nationwide injunctions are not common, in certain circumstances nationwide relief is appropriate and necessary when

**Memorandum Opinion and Order – Page 20**

attempted to intervene on June 6, 2023, in the action pending before Judge Boyle before filing this lawsuit. Under these circumstances, the court determines that the NRA's delay was not so unreasonable to militate against a finding of irreparable harm.

### 4. The Balance of Equities and Public Interest

When, as here, the Government is a party, the remaining two requirements for injunctive relief—whether the threatened injury to the movant outweighs the threatened harm to the defendant and whether the granting of the preliminary injunction will disserve the public interest— merge together. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Fifth Circuit has already concluded that the Final Rule "fails the logical outgrowth test and violates the APA" and "therefore must be set aside as unlawful" under the APA. *Mock*, 75 F.4th at 578, 583-86 (citations omitted). The undersigned has also determined that compliance with the Final Rule is not discretionary, and the NRA's members face severe penalties for their failure to comply with the Final Rule. Accordingly, both of the final requirements for injunctive relief are satisfied because the threatened injury to the NRA's members outweighs the threatened harm to the Defendants, and enforcement of the Final Rule under the circumstances will not disserve the public interest. *See Alliance for Hippocratic Med.*, 78 F.4th at 251 (5th Cir. 2023) ("[N]either [the Government Defendants] nor the public has any interest in enforcing a regulation that violates federal law.") (citing *Louisiana*, 55 F.4th at 1035 ("There is generally no public interest in the perpetuation of unlawful agency action.") (citations omitted).

---

there are multiple challenges to a regulation that affect numerous persons nationwide, and there is a need for consistent enforcement of the regulation. *See* Mock, 75 F.4th at 587-88. Moreover, Defendants do not dispute the NRA's stated reason for delaying; they simply disagree whether the delay was reasonable.

**Memorandum Opinion and Order – Page 21**

### III.    Conclusion and Preliminary Injunction

For the reasons explained, the court **concludes** that the NRA has associational standing to sue on behalf of its members and has met its burden of establishing each of the four requirements for a preliminary injunction.  The court, therefore, **grants** the NRA's Motion (Doc. 8) and request for a preliminary injunction, and it **enjoins** the ATF; Steven Dettelbach, in his official capacity as the Director of the ATF; the United States Department of Justice; and Merrick Garland, in his official capacity as the United States Attorney General from enforcing the Final Rule against the NRA's members pending the final resolution of this action on the merits. In accordance with Federal Rule of Civil Procedure 65(d), this preliminary injunction order **enjoins** and **applies** with equal force to Defendants' "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)," and Defendants **shall** provide notice to all such persons of this preliminary injunction order.

**It is so ordered** this 29th day of March, 2024.

Sam A. Lindsay
United States District Judge